UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| AMANDA WEST, individually and as Personal Representative of the Estate of PATRICK EASTON WEST; PATRICK ERROL WEST; and BERTHA WEST,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF MONTESANO, WASHINGTON; THE CITY OF ABERDEEN, WASHINGTON; THE CITY OF HOQUIAM, WASHINGTON; BRETT VANCE; DALE GREEN, ANDY SNODGRASS; and DAVID PETERSON;<br><br>Defendants. | No._____<br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF FEDERAL CIVIL RIGHTS AND THE AMERICANS WITH DISABILITIES ACT<br><br>DEMAND FOR JURY |

COME NOW the Plaintiffs, and allege as follows:

## I.     INTRODUCTION

1.1     The police departments for defendant cities of Montesano, Aberdeen, and Hoquiam, in partnership with the city of Cosmopolis and Grays Harbor County, maintain and operate a military-style tactical response team called the Aberdeen Regional Crisis Response Unit ("ARCRU"). The ARCRU was created pursuant to an Interlocal Agreement between these five municipalities and was intended to respond to "serious criminal incidents." The ARCRU is administered by the chief law enforcement officers of each participating agency.

COMPLAINT FOR DAMAGES - 1

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10633.1 hd101401

1.2     The ARCRU deploys with camouflage military-style uniforms, weaponry, tactical gear, snipers, and an armored vehicle—a response commonly associated with "SWAT" teams. But the ARCRU is not called a "SWAT" team because it does not meet recognized training and operational standards for "SWAT" teams.  According to official annual reports published by the City of Aberdeen, the entire ARCRU team rarely trains together, and the crisis negotiation officers train even less than the tactical officers.  The team's training "places an emphasis on shooting."

1.3     On April 16, 2019, the ARCRU responded not to a serious criminal incident, but to a 42-year-old man—Patrick Easton West ("Pat" [1])—experiencing a mental health crisis, alone in his own home in Montesano.  Pat had not hurt anybody.  He had no access to firearms.  He had no significant criminal history.  At the time the police response began, he was not suspected of any crime.  As the police response escalated, his wife, parents, siblings, and close friends gathered down the street, pleading with officers that this was a medical situation and that the police tactics were only aggravating Pat's mental health symptoms.

1.4     But instead of focusing on de-escalation and responding appropriately to Pat's symptoms, the defendant officers in charge of the ARCRU steadily escalated their militarized response.  They seized Pat's home and property, surrounding it with armed officers, positioning snipers on nearby rooftops, and driving an armored vehicle into Pat's front yard.  They sought a search warrant to enable them to make a tactical entry into Pat's home.  And finally—despite hearing from their own negotiators that Pat was "coming down" from his agitated state—they approached the house with a heavily-armed entry team to breach the door to Pat's basement workshop with a battering ram and insert their "Throwbot" (a robotic camera) into the house.

1.5     As the entry team reapproached the house after breaching the door, Pat appeared inside his workshop, holding a piece of steel billet.  When multiple officers began shouting

---

[1] Because all plaintiffs share the same last name, the complaint sometimes uses their first names for readability.  Because the decedent, Patrick Easton West, and his father, plaintiff Patrick Errol West, share such similar names, plaintiffs will refer to Patrick Easton West by "Pat" and his father by his full name.

COMPLAINT FOR DAMAGES - 2

conflicting commands—including "drop the weapon"—Pat tossed the steel billet through the doorway into the yard, where it fell into the grass without harming anybody. Then the front officer on the entry team—Hoquiam Officer David Peterson, who carried a ballistic shield, wore a helmet and multiple layers of body armor, and was covered by officers with rifles behind him and on nearby rooftops—fired seven shots at Pat, striking him three times.

1.6     Pat's wife, plaintiff Amanda West, and parents, plaintiffs Bertha and Patrick Errol West, were just down the block and heard the gunshots as the officers entered the property and shot their husband and son. They could see as officers brought Pat, still conscious, bleeding from the mouth, and suffering immensely, from the house and to a waiting ambulance. Pat was taken to Grays Harbor Community Hospital, where he died from his wounds the next day. He left behind his wife, his parents and siblings, and his nine-year-old daughter, of whom he shared equal custody.

## II.     PARTIES

2.1     Plaintiff Amanda West is the Personal Representative of the Estate of Patrick Easton West. She was also his wife. At all times relevant to this claim she and Patrick Easton West lived together at the home where Pat was killed in Montesano, Washington.

2.2     Plaintiffs Patrick Errol West and Bertha West were the parents of Patrick Easton West.

2.3     Amanda West, Patrick Easton West, Patrick Errol West, and Bertha West are and were all citizens of the United States and residents of Grays Harbor County, Washington.

2.4     Defendant City of Montesano is a municipal corporation located in Grays Harbor County, Washington. The City of Montesano authorized the creation of the ARCRU pursuant to an Interlocal Agreement, authorized its police officers to participate in operations under the command and control of the ARCRU, and placed responsibility for administering the ARCRU in the hands of its chief law enforcement officer.

2.5     Defendant City of Aberdeen is a municipal corporation located in Grays Harbor County, Washington. The City of Aberdeen authorized the creation of the ARCRU pursuant to

COMPLAINT FOR DAMAGES - 3

10633.1 hd101401

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

an Interlocal Agreement, authorized its police officers to participate in operations under the command and control of the ARCRU, and placed responsibility for administering the ARCRU in the hands of its chief law enforcement officer.

2.6     Defendant City of Hoquiam is a municipal corporation located in Grays Harbor County, Washington.  The City of Hoquiam authorized the creation of the ARCRU pursuant to an Interlocal Agreement, authorized its police officers to participate in operations under the command and control of the ARCRU, and placed responsibility for administering the ARCRU in the hands of its chief law enforcement officer.

2.7     Defendant Brett Vance was at all times relevant to this complaint an employee of the City of Montesano and its Chief of Police and policymaker for law enforcement.  He was also the Incident Commander of the ARCRU operation on April 16, 2019 that resulted in the killing of Patrick Easton West.  At all times relevant to this complaint, he was working under color of law and within the scope of his employment and agency for the City of Montesano and ARCRU.

2.8     Defendant Dale Green was at all times relevant to this complaint a police officer and an agent and employee of the City of Aberdeen.  He was also a member of the ARCRU and was the Tactical Commander for the operation on April 16, 2019 that resulted in the killing of Patrick Easton West.  At all times relevant to this complaint, he was working under color of law and within the scope of his employment and agency for the City of Aberdeen and the ARCRU.

2.9     Defendant Andy Snodgrass was at all times relevant to this complaint a police officer and an agent and employee of the City of Aberdeen.  He was also the Team Leader in the ARCRU operation on April 16, 2019 that resulted in the killing of Patrick Easton West.  At all times relevant to this complaint, he was working under color of law and within the course and scope of his employment and agency for the City of Aberdeen and ARCRU.

2.10    Defendant David Peterson was at all times relevant to this complaint a police officer and an employee of the City of Hoquiam. He was also a member of the ARCRU during the operation on April 16, 2019 that resulted in the killing of Patrick Easton West.  At all times

COMPLAINT FOR DAMAGES - 4

10633.1 hd101401

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

relevant to this complaint, he was working under color of law and within the course and scope of his employment and agency for the City of Hoquiam and ARCRU.

### III. JURISDICTION AND VENUE

3.1   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.2   Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Western District of Washington.

3.3   In accordance with RCW 4.96.020, plaintiffs have also served the municipal defendants with tort claim forms providing notice of claims arising from this incident under state law.  Should those claims not be accepted, after sixty days have elapsed from presentment plaintiffs will amend this complaint to add their state-law claims, over which this Court will have jurisdiction pursuant to 28 U.S.C. § 1367.

### IV. FACTUAL ALLEGATIONS

4.1   On April 16, 2019, Montesano, Washington police received a report that Patrick Easton West was experiencing a mental health crisis.  In response, officers were dispatched around 2:10 PM for a welfare check at the home in Montesano where Pat lived with his wife, Amanda West.

4.2   When the officers arrived, including defendant Chief Vance, they spoke to Amanda and two staffers from a local crisis clinic who were across the street from the house. The officers learned that Pat was suffering from symptoms of mental illness but had refused to speak to the crisis clinic workers and told them to leave him alone.  The officers also learned that although Pat had been seen holding a sword-like piece of metal (half of a steel billet from his workshop with electrical tape wrapped around one end), he had not threatened or assaulted the crisis clinic workers or Amanda.  Amanda also informed the officers that Pat did not have access to firearms and was alone in the house.

COMPLAINT FOR DAMAGES - 5

4.3     From that point forward, every law enforcement officer to respond to the scene knew Pat was experiencing a mental health crisis.

4.4     The Montesano officers who initially responded unreasonably escalated the encounter.  They climbed onto the bed of Pat's pickup truck to peer at him over the six-foot cedar fence surrounding his home and tried to open his fence gate.  These actions further agitated Pat, who came out into his yard and yelled at the officers to leave.  At various points in time, Pat carried one or both halves of the steel billet from his workshop.  At one point, he held a blue Ball mason jar with a rag in it, which officers reported as a possible Molotov cocktail, and shined an infrared thermometer at officers.

4.5     Early in the encounter, defendant Montesano Chief of Police Brett Vance requested assistance from the Aberdeen Regional Crisis Response Unit ("ARCRU")—a multi-jurisdictional tactical team made up of officers from Montesano, Aberdeen, Hoquiam, Grays Harbor County, and Cosmopolis that, according to the interlocal agreement governing its formation, is intended "to provide effective responses to serious criminal incidents."

4.6     Although the ARCRU engages in paramilitary tactical operations, including deployment of officers in camouflage uniforms and tactical gear, special weaponry, snipers, and an armored vehicle, it is not called a "SWAT" team because it does not meet recognized "SWAT" training or operational standards.  According to official reports produced by the City of Aberdeen, the ARCRU rarely trains as an entire team, and the crisis negotiators train even less than the tactical officers.  The ARCRU training "places an emphasis on shooting."

4.7     In response to Chief Vance's first inquiry, defendant Aberdeen Police Commander Dale Green, the ARCRU Commander, offered to send a crisis negotiator but informed Chief Vance that the situation did not satisfy ARCRU callout criteria because Pat had not committed a crime.

4.8     Shortly thereafter, Chief Vance requested ARCRU activation again, now reporting that Pat had hit his cedar fence with his steel billet while a Montesano officer was standing on the opposite side.  The officer stepped back from the fence and was not hit or

COMPLAINT FOR DAMAGES - 6

10633.1 hd101401

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

injured. But Chief Vance described this as an assault on an officer, and the ARCRU was activated. Chief Vance served as the Incident Commander, responsible for authorizing any tactical plans; Aberdeen Commander Dale Green served as ARCRU Commander, with operational command of the team; and Aberdeen Detective Andy Snodgrass served as the tactical Team Leader.

4.9     Throughout the encounter, defendants Vance, Green, and Snodgrass caused and participated in the warrantless seizure of the property and the fenced yard surrounding Pat and Amanda's home. They did so first by stationing armed Montesano officers, and later ARCRU tactical team members, snipers, and an armored vehicle in positions around the property and summoning Pat out of his house. These seizures were made without a warrant or exigent circumstances.

4.10    At the time of these seizures, Pat was in his home and on his property. No one else was present and he was a threat to no one else. He refused to consent to requests by the defendants and other officers that he leave his home or allow them to enter.

4.11    At the time of these seizures, Amanda was near the house, outside the property. She informed the officers, including Chief Vance, that her husband was suffering from mental illness but was not a danger or threat to her or anyone else in her home and did not have access to firearms. She did not consent to the officers entering her home and asked them to leave.

4.12    At the time of these seizures, Bertha and Patrick Errol West, Pat's parents, also came to the scene and spoke with officers. They too told the officers that their son was suffering from mental illness, that the police response was aggravating his symptoms, and that he was not a danger to others if left alone. They told the police they wanted to get their son to a doctor and asked them to leave.

4.13    Despite these requests and warnings, the defendants continued to escalate the police response and make plans for a tactical entry into the home. The ARCRU command used the supposed assault that occurred when Pat hit the fence to obtain a search warrant for the West's home, nominally to look for evidence of the assault, but intended to "extricate" Pat from

COMPLAINT FOR DAMAGES - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10633.1 hd101401

his home and take him into custody. The search warrant was obtained from the Grays Harbor County District Court, which did not have authority to issue arrest warrants in the absence of a criminal complaint filed by a prosecuting authority.

4.14   After the warrant was issued, the officers informed Pat that he was under arrest, although he was still in his home and they had no arrest warrant.

4.15   Meanwhile, between roughly 4 and 6 PM, Pat spoke on the phone to several negotiators, as well as Amanda and his parents. Throughout this time, no exigent circumstances required the officers to enter Pat's home.

4.16   Shortly before 6 PM—around the same time the search warrant was obtained—negotiator Marcus O'Connor reported that he noticed a difference in Pat's demeanor. He was more subdued, and he seemed lethargic, with slurred speech. Amanda spoke by phone to Pat around the same time and noticed the same thing, which she also reported to Chief Vance. According to O'Connor, Pat seemed to be "coming down."

4.17   But rather than take advantage of this opportunity for successful de-escalation, the officers in charge again made unreasonable decisions that escalated the encounter. Defendants Vance, Green and Snodgrass ordered an entry team of heavily armed ARCRU officers, including defendant Peterson, to breach the door to Pat's basement workshop with a battering ram to insert a "Throwbot" (a robotic video camera) and prepare for a forcible tactical entry.

4.18   The decision to enter Pat's home in this manner under these circumstances was unnecessary, unreasonable, and reckless.

4.19   The five officers assigned to breach the door were dressed in military-style camouflage uniforms, outfitted with helmets and body armor, and carried a battering ram, a ballistic shield, and both lethal and nonlethal firearms. Two snipers also provided rifle cover for the officers from nearby rooftops. It was foreseeable that the manner in which these officers were dressed and equipped would aggravate Pat's fear and mental health symptoms and interfere with his ability to accept help or treatment.

COMPLAINT FOR DAMAGES - 8

10633.1 hd101401

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

4.20   The officers assigned to breach the door did so with a battering ram. They used the battering ram to knock the door off its hinges.

4.21   The officers then reapproached the breached door through the yard and prepared to deploy the robot by throwing it inside the house.  As they approached, defendant Peterson saw Pat inside, holding his steel billet.  Multiple officers began yelling conflicting commands, including to "drop the weapon." In response, Pat tossed the billet through the doorway several feet away into the grass.  Officers later said the metal piece "may have" glanced off one of their legs, but if it did it caused no injury and left no mark, before falling harmlessly to the ground.

4.22   Officer Peterson, who still had a ballistic shield in front of him and armed cover officers behind him and above, then fired seven (7) shots in Pat's direction, some of them through the workshop wall, striking Pat three times in the arm and back.  Peterson gave no warning.  No other officer fired a lethal weapon.

4.23   Officer Peterson's decision to use deadly force was unreasonable and unjustified.

4.24   Amanda West, Bertha West and Patrick Errol West were all nearby and heard the gunshots when defendant Peterson fired his pistol. Amanda, Bertha, and Patrick saw Pat removed from the house and property, conscious and gravely wounded.

4.25   Patrick Easton West was taken to the Grays Harbor Community Hospital, where he died from his wounds on April 17, 2019.

4.26   In causing the seizure of the home and property of Patrick Easton West and Amanda West, defendants Vance, Green, and Snodgrass acted unreasonably and without probable cause, exigent circumstances, or a valid warrant.  Defendant Vance's actions were oppressive and taken with reckless disregard for Pat and Amanda's constitutional rights.

4.27   In causing the seizure of the person of Patrick Easton West, defendants Vance, Green, Snodgrass, and Peterson acted unreasonably and used excessive force and unreasonable means.  The actions of defendants Vance, Green, Snodgrass, and Peterson were oppressive and taken with reckless disregard for Pat's constitutional rights.

COMPLAINT FOR DAMAGES - 9

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

10633.1 hd101401

4.28   In causing the seizure of the person of Patrick Easton West in the manner they did, defendants Vance, Green, and Snodgrass had time to deliberate but acted with deliberate indifference to the risk their actions posed to the familial rights of plaintiffs Amanda West, Bertha West, and Patrick Errol West.  The actions of defendants Vance, Green, and Snodgrass were oppressive and taken with reckless disregard for Amanda, Patrick Errol West, and Bertha's constitutional rights.

4.29   The cities of Montesano, Aberdeen, and Hoquiam caused these violations by authorizing the creation of the ARCRU, and authorizing their agents Vance, Green, and Snodgrass to administer the ARCRU and participate in operations under the command and control of the ARCRU, with deliberate indifference to its officers' need for adequate training to conduct its operations reasonably and in a manner consistent with the Fourth and Fourteenth Amendments.

4.30   Patrick Easton West was a person with disabilities within the meaning of the Americans with Disabilities Act.  In the above-described actions, agents of the City of Montesano, the City of Aberdeen, and the City of Hoquiam failed to reasonably accommodate persons with such disabilities in the "crisis response" program they created and maintained (the ARCRU), and in the actions and activities that led up to his shooting and caused his death.

4.31   As a proximate result of the defendants' above-described wrongful actions, Patrick Easton West suffered loss of liberty, invasion of his home and property, physical and emotional pain and suffering, and lost his life.

4.32   As a proximate result of the defendants above-described actions, Amanda West suffered an invasion of and damage to her home and property, and lost the care, love and companionship of Patrick Easton West, and experienced great emotional distress.

4.33   As a proximate result of the defendants above-described actions, Bertha West and Patrick Errol West lost their son and experienced great emotional distress.

## V.   CLAIMS

### FIRST CAUSES OF ACTION

COMPLAINT FOR DAMAGES - 10

10633.1 hd101401

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**(Federal Civil Rights Violation Under 42 U.S.C. § 1983)**

5.1     By virtue of the facts set forth above, all the above-named defendants are liable under 42 U.S.C. § 1983, for damages for causing plaintiffs Patrick Easton West and Amanda West to be deprived of the right guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, to be free from the unreasonable search and seizure of their home and adjacent property.

5.2     By virtue of the facts set forth above, all the above-named defendants are liable under 42 U.S.C. § 1983, for damages for causing plaintiff Patrick Easton West to be deprived of the right guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States to be free from unreasonable seizures of his person.

5.3     By virtue of the facts set forth above, all the above-named defendants are liable under 42 U.S.C. § 1983 for damages for causing the deprivation of the civil rights of plaintiffs Amanda West, Bertha West, and Patrick Errol West guaranteed by the Fourteenth Amendment to the Constitution of the United States, to be free from the deprivation of their liberty interest in a family relationship with their husband and son without due process of law.

**SECOND CAUSE OF ACTION**

**(Violations of Title II of the Americans With Disabilities Act,
42 U.S.C. § 12131 *et seq.*)**

5.6     By virtue of the acts and omissions described above, the defendant Cities of Montesano, Aberdeen and Hoquiam are liable for compensatory damages for the deprivation of the rights of Patrick Easton West guaranteed by the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*.

**VI.     DEMAND FOR JURY**

6.1     Plaintiffs demand a trial by jury.

**VII.     PRAYER FOR RELIEF**

COMPLAINT FOR DAMAGES - 11

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10633.1 hd101401

WHEREFORE, Plaintiffs request relief as follows:

7.1   Compensatory damages;

7.2   Punitive damages from the individual defendants on Plaintiffs' claims under 42 U.S.C. § 1983;

7.3   Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and 42 U.S.C. §12205, and to the extent otherwise permitted by law;

7.4   The right to conform the pleadings to the evidence adduced at trial;

7.5   Such other relief as may be just.

DATED this 28th day of January, 2021.

MacDONALD HOAGUE & BAYLESS

By s/*Tiffany M. Cartwright*
Tiffany M. Cartwright, WSBA # 43564
tiffanyc@mhb.com
705 2nd Ave, Suite 1500
Seattle, WA 98104
206-622-1604

*Attorneys for Plaintiff*

MacDONALD HOAGUE & BAYLESS

By s/*Timothy K. Ford*
Timothy K. Ford, WSBA #5986
timf@mhb.com
705 2nd Ave, Suite 1500
Seattle, WA 98104
206-622-1604

*Attorneys for Plaintiff*

MacDONALD HOAGUE & BAYLESS

By s/*Mika Rothman*
Mika Rothman, WSBA # 55870
mikar@mhb.com
705 2nd Ave, Suite 1500
Seattle, WA 98104
206-622-1604

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES - 12

10633.1 hd101401

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961